997 S.W.2d 173 (1999)
In re ALFORD CHEVROLET-GEO, et al., Relators
No. 97-1171.
Supreme Court of Texas.
Argued September 8, 1998.
Decided June 10, 1999.
Rehearing Overruled August 26, 1999.
*175 William Ikard, Austin, William W. Kilgarlin, Santa Fe, NM, Nicole Moss, Mark L. Perlmutter, Austin, Lynne Liberato, Alene Ross Levy, Houston, Carl Brooks Schuelke, Austin, Kent Rutter, Houston, for Relators.
Eugene B. Wilshire, Jr., Houston, Keith Welch, Shreveport, LA, Franklin Jones, Jr., D. Bryan Hughes, Mike C. Miller, Robert L. Templeton, Amarillo, J. Patrick Hennessy, Shreveport, LA, Joe W. Hayes, John Smithee, Amarillo, Kelly Cox Thornton, Houston, for Respondent.
Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice ABBOTT, Justice O'NEILL and Justice GONZALES joined.
This original mandamus proceeding arises out of a class-action lawsuit. Relators, defendants in the underlying proceeding, present two issues for determination. First, have Plaintiffs sent proper notice of their claims under the Deceptive Trade Practices Act (DTPA)? Second, are Relators entitled to an order bifurcating class and merits discovery? We conclude that Plaintiffs' DTPA notices, which demanded settlement on behalf of the entire putative class, were proper. We also conclude that, because Relators did not clearly distinguish *176 class and merits discovery, Relators are not entitled to an order bifurcating the two. Accordingly, we deny the writ of mandamus.
Envo-Tech, Inc., Jett Jones, Sheryl M. Nickerson, and Leon M. Andrews, III, filed a class-action lawsuit against 636 Texas motor vehicle dealerships, alleging that the dealerships committed fraud, conspiracy, and DTPA violations by passing on their inventory taxes to consumers as an itemized charge in addition to the advertised or negotiated purchase price. Plaintiffs allege that "each Defendant conspired and agreed to charge the so-called `tax' to each purchaser, to mislead and fail to inform each purchaser as to the nature and legal obligation to pay such tax, and to require `add-on' of the so-called tax as a condition to purchasing the vehicle in Texas." Plaintiffs seek to represent consumers who bought vehicles from the dealers since January 1, 1994.
Relators, 598 of the 636 defendant dealers, moved to abate on the ground that Plaintiffs did not send then-adequate DTPA notices. They also moved for a protective order to abate all merits discovery until after class certification, urging that the broad, expensive classwide discovery the Plaintiffs sought would be unnecessary if the class were not certified. Relators further objected to Plaintiffs' interrogatories and requests for production. The trial court denied the motion to abate and the motion to bifurcate. It sustained in part and overruled in part Relators' objections. Relators petition for mandamus relief from the two orders denying abatement and bifurcation. They do not challenge the trial court's ruling on the specific discovery objections. We address the abatement and bifurcation issues in turn.

I

Standards for Mandamus
Mandamus will lie only to correct a trial court's clear abuse of discretion when no adequate remedy by appeal exists. See Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex.1992). A trial court abuses its discretion if it erroneously denies a DTPA defendant's timely request for abatement. See Hines v. Hash, 843 S.W.2d 464, 469 (Tex.1992); TEX. BUS. & COMM.CODE § 17.505(d). Also, "[a]n order compelling discovery that is well outside the proper bounds is reviewable by mandamus." In re American Optical Corp., 988 S.W.2d 711, 713 (Tex.1998). Therefore, we consider whether the trial court abused its discretion by denying Relators' pleas in abatement and motion for protective order.

II

DTPA Notice
Before filing a DTPA claim, a consumer must timely advise the defendant "in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant." See TEX. BUS. & COMM.CODE § 17.505(a). Upon receipt of the notice, a defendant may establish a defense to the suit as a matter of law by tendering the full amount of damages claimed plus a reasonable amount for fees and expenses. See id. § 17.506(d). Alternatively, a defendant may establish a defense to the amount of damages by offering to tender an amount of damages that is substantially the same as, or more than, the damages the factfinder ultimately awards. See id. § 17.5052(g). If a consumer files a DTPA suit without sending notice, the defendant is entitled to abatement of the suit until sixty days after proper notice is sent. See id. § 17.505(d), (e).
Plaintiffs did not send the required DTPA notices before filing suit. After Relators filed pleas in abatement complaining of that omission, Plaintiffs sent Relators belated notices demanding that Relators reimburse all consumers who *177 paid an itemized vehicle inventory or similar tax since January 1, 1994, plus expenses incurred both before and after suit was filed. Relators contend that the notices are not proper under section 17.505(a) because they demand relief for the class, not just the named Plaintiffs, plus expenses incurred after Plaintiffs filed suit. They argue that before a DTPA action can proceed, the consumer must demand a settlement limited to the named consumer's own economic and mental anguish damages and presuit expenses, and that the demand cannot include damages sought on a class's behalf.
As originally enacted in 1973, the DTPA specifically authorized a plaintiff to give notice on behalf of an uncertified class. See Act of May 4, 1973, 63rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, 330. In 1977, the Legislature repealed the consumer class provisions. See Act of May 6, 1977, 65 th Leg., R.S., ch. 216, §§ 10-13, 1977 Tex. Gen. Laws 605. Relators argue that these deletions signified a legislative intent to either eliminate DTPA class actions altogether or empower defendants to unilaterally preempt DTPA class action suits by tendering full payment to only the named plaintiffs.
We disagree. Several commentators have pointed out that the likely motive for repealing the DTPA class-action provisions was the Supreme Court's revision of Texas Rule of Civil Procedure 42, approved on May 9, 1977, which rendered the DTPA provisions unnecessary. See Jack Pope & Steve McConnico, Texas Civil Procedure Rule Making, 30 BAYLOR L.REV. 5, 15 (1978) ("To avoid interfering in this area the Texas Legislature then repealed the sections of the Texas Business & Commerce Code which had authorized class actions in the limited area of deceptive trade practices."); William V. Dorsaneo, III, Creditor's Rights, 32 SW. L.J. 245, 268 n. 198 (1978) ("The general provisions of the rule rendered the special class action provisions of the DTPA unnecessary."); see also America Online, Inc. v. Williams, 958 S.W.2d 268, 274-75 (Tex.App.Houston [14 th Dist.] 1997, no writ); Mahoney v. Cupp, 638 S.W.2d 257, 261 (Tex.App. Waco 1982, no writ) (both adopting same view). The 1973 DTPA class action provisions were patterned after the federal class-action rule, which commentators generally favored over the then-current version of Texas rule 42. See Act of May 4, 1973, 63 rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, 328 (directing Texas courts to follow federal decisions interpreting Federal Rule of Civil Procedure 23); see also 24 B. THOMAS MCELROY, TEXAS PRACTICE: CIVIL PRE-TRIAL PROCEDURE §§ 615-17 (1980) (discussing problems with former rule 42). Because the 1977 revisions to rule 42 made it almost identical to its federal counterpart, there was no longer a need to retain the DTPA's separate class-action provisions.
Relators point out, however, that when the Legislature adopted the class-action provisions of the DTPA in 1973, it also amended article 21.21 of the Texas Insurance Code to add virtually identical class-action procedures. See TEX. INS.CODE art. 21.21, §§ 17-19. The Legislature did not, however, repeal the Insurance Code class-action provisions. Also, the DTPA originally had two provisions relating to class actionsone for procedure, and one for preliminary noticebut only the former would have duplicated amended rule 42. See Act of May 4, 1973, 63rd Leg., R.S., ch. 143, 1973 Tex. Gen. Laws 322, 328-30. Relators argue that had the Legislature merely intended to remove any inconsistency between rule 42 and the DTPA class-action procedures, it would have also repealed the Insurance Code class-action provisions and would not have abolished the DTPA's class-action preliminary notice provision.
Neither the Legislature's jettisoning of the class-action provisions of the DTPA but not of the Insurance Code, nor its substitution of the DTPA's class-specific preliminary notice provision with more general notice provisions, reveals an obvious *178 legislative intent to abolish DTPA class actions. Cf. Dutcher v. Owens, 647 S.W.2d 948, 950 (Tex.1983) (warning against use of conjecture to supply legislative intent); Massachusetts v. United N. & S. Dev. Co., 140 Tex. 417, 168 S.W.2d 226, 229 (1942) ("Interpretation by implication is permitted only to supply obvious intent not expressly stated, and never to contradict nor add to a statute."). Nothing in the legislative history of the 1977 amendments indicates that the Legislature intended to abolish DTPA class actions, and we decline to infer such an intent. If the Legislature had intended to abolish DTPA class actions, it could have expressly done so. We hold that the DTPA permits a consumer to provide preliminary notice on behalf of a putative class.
Courts have long recognized the authority of individual plaintiffs to negotiate settlements on behalf of putative classes. See, e.g., Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 597-98, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); General Motors Corp. v. Bloyed, 916 S.W.2d 949, 951 (Tex.1996). Of course, such settlements are ultimately subject to class certification and court approval. See TEX.R. CIV. P. 42(e). Plaintiffs' demand that Relators reimburse the members of the putative class did not circumvent the DTPA's statutory notice requirements.
Relators also object to the notices on the ground that Plaintiffs are permitted to demand only presuit damages and expenses, including attorneys' fees, that Plaintiffs incurred in asserting the DTPA claim. Plaintiffs have demanded more than just presuit expenses. Their April 29, 1998, notice demands $110,000 in "attorneys' fees to date" and $49,762 in "costs to date." This complaint, however, challenges the requested fees' reasonableness, not the notice's validity. Even if this request was excessive or unreasonable, an issue we do not decide, it did not interfere with Relators' ability to create a defense to the suit by tendering the amount of economic and mental anguish damages claimed, and the expenses, including attorneys' fees, reasonably incurred by the consumers in asserting the claims. See TEX. BUS. & COMM.CODE § 17.506(d). A defendant's ability to assert a complete defense depends on the reasonableness of the amount tendered to pay for the consumer's expenses, not on whether the tender matches or exceeds the consumer's claimed expenses.
Relators further argue that even if Plaintiffs' belated notices were proper, the trial court abused its discretion by refusing to order the case abated for sixty days. For those DTPA claims controlled by the current DTPA, the trial court did not need to formally abate the suit because by the time it issued its ruling, more than sixty days had passed since Plaintiffs sent their notices. Under section 17.505, "[a] suit is automatically abated without the order of the court beginning on the 11th day after the date a [verified and uncontroverted] plea in abatement is filed" and continuing "until the 60th day after the date the written notice is served in compliance with Subsection (a)." TEX. BUS. & COMM.CODE § 17.505(d), (e). Therefore, with respect to those claims that had already been automatically abated, the trial court did not need to formally grant another sixty-day abatement.
Relators assert, however, that the claims of one of the named plaintiffs, Envo-Tech, Inc., were not automatically abated because they were governed by the pre-1995 version of the DTPA. Envo-Tech purchased vehicles from Relators on October 17, 1994, and April 26, 1995, before the automatic abatement provisions became effective. Before the 1995 amendments, the DTPA did not specify the consequences for noncompliance with the notice requirement. In Hines v. Hash, 843 S.W.2d 464, 469 (Tex.1992), we held that "if a plaintiff files an action for damages under the DTPA without first giving the required notice, and a defendant timely requests an abatement, the trial court must abate the *179 proceedings for 60 days." Relators insist, therefore, that under the pre-1995 DTPA, the trial court was required to formally abate the proceedings for sixty days.
Which DTPA version applies to Envo-Tech's claims, however, depends on the date the claims accrued. Suits filed before September 1, 1996, relating to claims accruing before September 1, 1995, are governed by the law in effect before the 1995 amendments. See Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 20, 1995 Tex. Gen. Laws 2988, 3004. A DTPA claim accrues when "the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COMM.CODE § 17.565. Relying on this statutory accrual rule, Envo-Tech alleges that its claims accrued not when it paid the challenged tax, but rather when it discovered the alleged deceptive act. Because the parties dispute when Envo-Tech's claims accrued, we cannot conclude that the trial court's refusal to order abatement was an abuse of discretion. See West v. Solito, 563 S.W.2d 240, 245 (Tex.1978) ("[A]n appellate court may not deal with disputed areas of fact in a mandamus proceeding.").
Plaintiffs' DTPA notices were adequate, and Relators have had several months to make a settlement offer since receiving them. Therefore, Relators have not established their right to relief by mandamus on the abatement issue.

III

Bifurcation of Discovery
The other issue in this mandamus proceeding involves discovery. Plaintiffs sent Relators interrogatories and document requests demanding disclosure of a broad range of information. Most of the proposed discovery can be broken down into four general categories: (1) each dealership's full name, "dealer's general distinguishing number," any business aliases or physical addresses used and the periods of such use since January 1, 1994, and any automobile trade association memberships and the periods of such memberships since January 1, 1992; (2) every oral and written communication with any purchasers, officers, salespersons, sales managers, finance and insurance workers, and automobile trade associations, regarding the vehicle inventory tax and any transaction in which it was charged; (3) identification of all persons having knowledge of relevant facts and what knowledge they may have; and (4) identification of the statutory or regulatory basis of any contention that the dealer is authorized to collect the vehicle inventory tax from the purchaser. Plaintiffs withdrew interrogatories that sought disclosure of each dealership's net worth and financial statements.
Relators refused to answer any of the interrogatories, objecting that before the trial court ruled on various threshold issuessuch as venue, jurisdiction, abatement, special exceptions, and class certificationdiscovery was premature, unduly burdensome, and constituted harassment. Relators also moved for a protective order to abate all discovery on the merits until at least thirty days after class determination. Relators argued that a bifurcation order would expedite class determination, protect Relators from discovery that would be rendered unnecessary if class status were denied, prevent the use of burdensome discovery to extort an unwarranted settlement, and promote judicial economy: "In summary, i) Plaintiffs' initial written discovery is premature and ii) ... if unabated, will result in incalculable expense and hardship on, as well as unavoidable and unnecessary harassment of Moving Defendants."
Plaintiffs opposed the motion and objections, arguing that such routine questions as "state your name" and "state your address" would help organize the pleadings and parties for purposes of the certification process. Plaintiffs contended that interrogatories seeking disclosure of inventory-tax-related communications are *180 necessary to help determine the size and identity of the putative class and to establish prima-facie proof of concerted action and conspiracy.
The trial court considered both Relators' objections and their motion for protective order at a hearing. The trial court first issued an order denying Relators' motion for protective order. Later the trial court issued a separate order overruling in part and sustaining in part Relators' general and specific interrogatory objections. We emphasize, as Relators did throughout their briefing before this Court, that in this mandamus proceeding, Relators challenge only the trial court's denial of their motion for protective order. They do not contest the trial court's rulings on their overbreadth and other specific objections to Plaintiffs' discovery requests. Relators contend that as a matter of law, they are entitled to an order bifurcating class and merits discovery.

A
We begin our analysis by reviewing some basic discovery principles. The primary objective of discovery is to ensure that lawsuits are "decided by what the facts reveal, not by what facts are concealed." Jampole v. Touchy, 673 S.W.2d 569, 573 (Tex.1984). As the United States Supreme Court has noted, modern discovery and pretrial procedures serve the useful purpose of "[making] a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).
In practice, however, discovery is not only "a tool for uncovering facts essential to accurate adjudication," but also "a weapon capable of imposing large and unjustifiable costs on one's adversary." Frank H. Easterbrook, Comment, Discovery as Abuse, 69 B.U.L.Rev. 635, 636 (1989). Discovery is often the most significant cost of litigation. See Wayne D. Brazil, Views From the Front Lines: Observations by Chicago Lawyers About the System of Civil Discovery, 1980 AM. B. FOUND. RES. J. 219, 229. Because the costs of compliance are usually borne solely by the replying party, a requesting party improves its bargaining position by maximizing those costs. See Easterbrook, supra, at 636 ("Litigants with weak cases have little use for bringing the facts to light and every reason to heap costs on the adverse party.... The prospect of these higher costs leads the other side to settle on favorable terms."). Both multi-party and class litigation can dramatically magnify those costs by expanding the scope of discovery. See CSR, Ltd. v. Link, 925 S.W.2d 591, 598 (Tex.1996) (Gonzalez, J., concurring) (recognizing that the costs of multi-party litigation can drive defendants to settle regardless of the merits); 7B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1796.1 (2nd ed.1986) (noting need, in class actions, to protect both absent class members and named representatives from harassing discovery). Recognizing the potential for these and other abuses, this Court and others have articulated principles and adopted procedural devices to curb discovery abuse.
First, discovery requests must be reasonably tailored to include only matters relevant to the case. See In re American Optical Corp., 988 S.W.2d 711, 712 (Tex.1998); Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex.1995).[1] Second, *181 discovery may not be used as a fishing expedition or to impose unreasonable discovery expenses on the opposing party. See K Mart Corp. v. Sanderson, 937 S.W.2d 429, 431 (Tex.1996); In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 263 (2d Cir. 1993). Third, a court may "in the interest of justice," issue a protective order to "protect the movant from undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." TEX.R. CIV. P. 192.6(b). The new discovery rules explicitly encourage trial courts to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." TEX.R. CIV. P. 192.4(b). Although a trial court has broad discretion to schedule and define the scope of discovery, it can abuse its discretion by acting unreasonably. See In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex.1998). A party resisting discovery, however, cannot simply make conclusory allegations that the requested discovery is unduly burdensome or unnecessarily harassing. The party must produce some evidence supporting its request for a protective order. See Garcia v. Peeples, 734 S.W.2d 343, 345 (Tex.1987); Independent Insulating Glass/Southwest, Inc. v. Street, 722 S.W.2d 798, 802 (Tex.App.Fort Worth 1987, writ dism'd).
Other principles inform more specific situations. For example, courts may limit discovery pending resolution of threshold issues like venue, jurisdiction, forum non conveniens, and official immunity. See TEX.R. CIV. P. 190.4(b)(2) (contemplating that a Level 3 discovery control plan may phase discovery to resolve discrete issues); see, e.g., USX Corp. v. West, 759 S.W.2d 764, 767 (Tex.App.Houston [1st Dist.] 1988, orig. proceeding) (special appearance).
Likewise, courts often limit discovery pending class determination. See, e.g., Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570-71 (11th Cir.1992); Stewart v. Winter, 669 F.2d 328, 331-32 (5th Cir.1982); see also Rodriguez v. Banco Central, 102 F.R.D. 897, 903 (D.P.R.1984); National Org. for Women v. Sperry Rand Corp., 88 F.R.D. 272, 277 (D.Conn.1980). These limitations protect not only class-action defendants but also putative class-action plaintiffs from abusive discovery. See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir.1981); 7B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1796.1 (2d ed.1986). Generally, however, a litigant will need some discovery to effectively support or oppose a class-certification motion. See Stewart, 669 F.2d at 331; Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc., 586 F.2d 962, 966 (2d Cir.1978). *182 Some courts, in fact, have held that denial of discovery critical to class-determination issues is reversible error. See, e.g., In re American Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir.1996); Duke v. University of Tex. at El Paso, 729 F.2d 994, 997 (5th Cir.1984); Chateau de Ville, 586 F.2d at 966; Doninger v. Pacific Northwest Bell, Inc., 564 F.2d 1304, 1312 (9th Cir.1977); Dillon v. Bay City Constr. Co., 512 F.2d 801, 804 (5 th Cir.1975); Yaffe v. Powers, 454 F.2d 1362, 1366 (1st Cir.1972).
The amount and nature of discovery needed for class determination is case specific and depends on the claims and defenses being made. In some cases, the certification decision can be made primarily on the basis of the pleadings, postponing and potentially eliminating the need for classwide discovery. See, e.g., Commercial Travelers Life Ins. Co. v. Spears, 484 S.W.2d 577, 579 (Tex.1972) (holding that the trial court abused its discretion by ordering discovery of other potential name plaintiffs when plaintiff's pleadings and evidence could not support a class action); Wente v. Georgia-Pacific Corp., 712 S.W.2d 253, 258-59 (Tex.App.Austin 1986, no writ) (holding that when different laws applied to defendant's transactions with various putative class members, precluding plaintiff from establishing a common question of law or fact among the putative class, plaintiff was not entitled to additional classwide discovery); Stewart, 669 F.2d at 332 (holding that certification decision on putative class of inmates in the jails of eighty-two different counties could be made on the basis of the pleadings). In many cases, however, discovery is needed to establish commonality of issues, typicality of claims, or predominance of common questions of law or fact over individual questions. Such discovery will frequently be enmeshed with the merits. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); see also David Crump, What Really Happens During Class Certification? A Primer for the First-Time Defense Attorney, 10 REV. LITIG. 1, 7 (1990) ("[S]uch issues as commonality, typicality, superiority, and predominance are at least tangentially related to the merits; i.e., one cannot know whether a representative's claim is `typical' of those of the class without knowing something about the merits.").
Generally, it is within the trial court's discretion to schedule discovery and decide whether and how much discovery is warranted to determine any certification questions. See In re Colonial Pipeline Co., 968 S.W.2d at 943. Factors in determining the scope of precertification discovery include the importance, benefit, burden, expense, and time needed to produce the proposed discovery. See TEX.R. CIV. P. 192.4; see also Kamm v. California City Dev. Co., 509 F.2d 205, 210 (9th Cir. 1975). Other factors include whether the individual claims are large enough to be worth pursuing if the class is not certified, and if so, whether the proposed discovery would relate to those individual claims. See Duke, 729 F.2d at 997; General Motors Corp. v. City of New York, 501 F.2d 639, 646 (2d Cir.1974).

B
With these general principles in mind, we address Relators' contention that they are entitled, as a matter of law, to an order bifurcating class and merits discovery. Two considerations inform this determination. First, because the propriety of bifurcating class and merits discovery is case specific, we evaluate whether Relators have shown that the specific claims and pleadings in this case are clearly separable; that is, can it be determined whether the requested discovery is relevant only to the merits and not to the certification issues, or whether the discovery is overly broad. Second, we evaluate whether Relators established their right to bifurcation by showing that Plaintiffs' proposed discovery is unduly burdensome or unnecessarily harassing.
Here, Relators failed to show or otherwise explain in their motion to bifurcate *183 that the class and merits issues are clearly separable. In this case, class and merits discovery are likely to be intertwined because the Plaintiffs allege oral and written misrepresentations that vary from one class member to another. Plaintiffs' pleadings indicate that different dealerships have characterized the "add-on" charge that forms the basis of this suit differently. One dealership characterized it as a "value tax," another as an "inventory tax," another as a "vehicle inventory tax," and still another as a "dealer's inventory tax." These characterizations are material to the claim that the dealerships misrepresented what is in fact a property tax the state charges dealerships as a transactional tax the state charges consumers. Because whether a fraud was committed may depend on how the add-on charge was characterized, the variations in those characterizations may undermine the requisite commonality and typicality needed for class certification. See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 482 F.2d 880, 882 (5th Cir.1973); Life Ins. Co. v. Brister, 722 S.W.2d 764, 774 (Tex.App.Fort Worth 1986, no writ). Classwide discovery may uncover further variations in those representations weighing against class certification. On the other hand, classwide discovery may uncover a common thread of deceit running through the dealerships' various representations weighing in favor of class certification. See Adams v. Reagan, 791 S.W.2d 284, 291 (Tex.App.Fort Worth 1990, no writ). Therefore, although such discovery would be relevant to the merits, we cannot say that Relators' motion to bifurcate shows the discovery is not relevant to the certification issues as well.
Moreover, in this case, an order bifurcating class and merits discovery without specifically differentiating the two would serve no constructive purpose. See 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3D § 23.61[6][b] (3d ed. 1999) ("[B]ecause class certification issues are not always completely separable from the merits of the class claims, bifurcation of discovery may sometimes be counterproductive."). First, a nonspecific bifurcation order would likely precipitate nettlesome disputes about whether a particular interrogatory or document request pertains to certification or merits. See, e.g., Eggleston, 657 F.2d at 893 (illustrating the disputes that can follow an order limiting initial discovery to class-determination issues). Second, such an order could unreasonably interfere with discovery of facts essential to class determination.
Relators' motion for protective order insisted that the trial court abate all merits discovery until thirty days after it determined the class. The supporting brief never specifically differentiated class and merits discovery. Moreover, the brief did not give the trial court any practical guidance on how it should make that distinction or efficiently implement the proposed order. Relators' most recent bifurcation proposal, offered to the Plaintiffs as a compromise, is no more specific:
Prior to certification, parties may obtain discovery regarding any matter that is reasonably calculated to lead to the discovery of admissible evidence relevant to class certification. Evidence that relates primarily to the proof of liability and damages shall not be discoverable.
If the trial court were to implement Relators' most recent bifurcation proposal, the parties would inevitably dispute whether each interrogatory and document request relates "primarily" to the merits or to class certification. Indeed, Relators' briefs insist that all of Plaintiffs' interrogatories including some as simple as "state your full name" or "state your address"are "either exclusively or primarily relevant to liability and damages, not certification." Relators' proposed bifurcation order, therefore, would accomplish nothing. The trial court would still have to rule on the propriety of each contested discovery requestwhich, in this case, means each and every interrogatory and document request.
*184 Also, Relators' proposed bifurcation order could prevent Plaintiffs from obtaining facts essential to class determination. One commentator suggests that a defendant's "best strategy may be to resist merits discovery while at the same time arguing that plaintiffs have not shown typicality or commonality, which depend somewhat on the merits." See Crump, supra at 7. There are, in fact, hints of such a strategy in Relators' briefs. On the one hand, Relators argue that before class determination, Plaintiffs are not entitled to discover the various representations the dealerships made to their customers in passing on the dealer inventory tax. On the other hand, Relators suggest that they will challenge certification on the ground that "the claims depend on oral statements that are case specific and each plaintiff is required to present proof of reliance." An order abating all merits discovery could prevent Plaintiffs from showing a common thread of deceit in Relators' various representations or other elements of commonality and typicality, potentially defeating certification.
Moreover, Relators failed to support their complaints of burdensomeness and harassment with anything more than general allegations. Without some more detailed explanation and proof, Relators have simply not met the basic requirements for limiting the scope of discovery under the rules of civil procedure. See TEX.R. CIV. P. 192.4, 192.6.
By contrast, a specific discovery order one directly addressing the amount and nature of discovery neededwould provide a more practical and efficient mechanism for limiting precertification discovery than a blanket bifurcation order. When disputes arise about the scope of precertification discovery, the Manual for Complex Litigation suggests that the parties present a specific discovery plan that identifies the contemplated discovery and the subject matter to which it relates:
Bifurcating class and merits discovery can at times be more efficient and economical (particularly when the merits discovery would not be used if certification were denied), but can result in duplication and unnecessary disputes among counsel over the scope of discovery. To avoid this, the court should call for a specific discovery plan from the parties, identifying the depositions and other discovery contemplated and the subject matter to be covered. Discovery relating to class issues may overlap substantially with merits discovery. A key question in class certification may be the similarity or dissimilarity between the claims of the representative parties and those of the class membersan inquiry that may require discovery on the merits and development of basic issues.
MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.12 (1995). Another commentator, writing for the defense bar, explains the need for meaningful discovery limitations:
Divergent views concerning the propriety of what traditionally is understood as "bifurcation" should be understood to arise from the problem of the distinction between class and merits discovery that defense counsel have typically sought to draw, rather than from any broader notion that all discovery should proceed at once. Accordingly, litigants should always be looking for other distinctions on the basis of which discovery can be segmented to control burden.
Timothy K. Beeken, Class Action Discovery: The Defense's Burden, Address at the Meeting of the National Institute on Class Actions: Section of Litigation (June 12, 1998), available in Westlaw, N98CACB ABA-LGLED D-1. Beeken suggests that production obligations be sequenced or phased, postponing production of the most sweeping discovery requests until after the most obviously pertinent sources of information are produced. See id. As with all litigants, we expect class-action litigants to cooperate on discovery plans and make any agreements reasonably necessary for the efficient disposition of the case. See TEX.R. CIV. P. 191.2.
*185 In this case, Relators urge that they are entitled, as a matter of law, to abate all merits discovery or all discovery that relates primarily to proof of liability or damages. Under the circumstances, they are not. Here, the merits and class issues are intertwined. Relators did not give the trial court or this Court any guidance on how to distinguish merits and certification discovery, much less how to evaluate to what issue the challenged discovery "primarily" relates. The relief sought in Relators' motion for protective order, abating of all Plaintiffs' discovery requests, would not give Plaintiffs or the trial court a fair factual sketch of matters related to certification. See Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571-72 (2d Cir.1982) ("In making a certification decision, a judge must look somewhere `between the pleadings and the fruits of discovery.... [E]nough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later review the myriad of details that cover the terrain.' ") (quoting Professional Adjusting Sys. of Am., Inc. v. General Adjustment Bureau, Inc., 64 F.R.D. 35, 38 (S.D.N.Y. 1974)). Rather, Relators' motion failed to clearly identify the specific matters and discovery requests that they contend are irrelevant or overbroad in relation to any threshold issues and explain the basis for those contentions. Finally, Relators did not produce any evidence that their existing discovery obligations are unduly burdensome, but argued only in the most general terms that all merits discovery should be abated until a decision on certification. It is not an abuse of discretion for a trial court to deny a motion for protective order that does not specifically identify the discovery to be limited, or that proposes to overly restrict relevant discovery. On this record, we hold that the denial of Relators' motion for protective order was not an abuse of discretion. See In re Colonial Pipeline Co., 968 S.W.2d at 941.

IV

Conclusion
For the above reasons, we conclude that the Relators have not established their right to relief by mandamus on either the abatement issue or the discovery matter. Therefore, we deny the writ of mandamus.
Justice HECHT filed an opinion concurring in part and dissenting in part, in which Justice OWEN joined.
Justice HECHT, joined by Justice OWEN, concurring in part and dissenting in part.
Relators are not, I agree, entitled to further abatement of plaintiffs' claims under the Deceptive Trade PracticesConsumer Protection Act,[1] but they are, I think, contrary to the Court's conclusion, entitled to a measure of protection from plaintiffs' initial broad discovery requests pending class certification, as plaintiffs themselves candidly acknowledge. The Court holds that because relators have not proposed a specific, detailed pre-certification discovery plan, the district court did not abuse its discretion in denying the motions for protection in their entirety with a two-sentence order that leaves relators under the obligation to respond fully to plaintiffs' requests for information far exceeding what should reasonably be producedor for that matter, what plaintiffs can reasonably reviewto determine whether the class should be certified. The responsibility for fashioning fair restrictions on pre-certification discoverysomething the Court, every authority it cites, and the parties to this proceeding all agree should be donecannot be cast solely upon the defendants; it must be shouldered by plaintiffs and defendants together, and by the trial court. Defendants should not be denied all protection from overly broad discovery requests merely because they have initially offered to produce too little, any more than plaintiffs *186 should be denied all discovery merely because they have initially asked for too much. The Court faults the defendants for failing to prove what restrictions should be placed on pre-certification discovery without requiring plaintiffs to show how much pre-certification discovery is justified. Responsibility for discovery planning cannot be this one-sided.
I do not argue that the district court in the present case should simply have granted relators' motions and ordered "bifurcation"; such an order would provide no more guidance to the parties than the order denying the motions. I argue only that the district court was required to grant relators more protection than it did from broad discovery on the merits of the putative class's claims before a class is certified, and that its failure to do so was an abuse of discretion. From the Court's contrary conclusion, I respectfully dissent.

I
The named plaintiffs, Jett Jones, Envo-Tech, Inc., Sheryl M. Nickerson, and Leon M. Andrews, III, allege that the motor vehicle dealer from whom each purchased a vehicle added to the negotiated price a charge for a vehicle inventory tax, either misrepresenting that the tax was to be paid by the purchaser or failing to disclose that it was owed by the dealer. Plaintiffs sued 636 Texas motor vehicle dealerships on behalf of all persons who bought vehicles from them since January 1, 1994 allegedly more than 500,000 personscontending that defendants all made the same charges accompanied by similar misrepresentations or nondisclosures, and that they conspired to do so. Most of the defendants, now relators in this Court, moved to abate plaintiffs' DTPA claims until after plaintiffs had given notice of their claims as required by the statute, moved to transfer venue, and challenged plaintiffs' standing to sue. Plaintiffs moved for certification of the class.
Plaintiffs' initial discovery request consisted of twenty interrogatories and two requests for production of documents. Relators objected to the request on several grounds, among them that the information sought related to class claims of liability and damages which should not be the subject of discovery until after a ruling on defendants' preliminary motions and certification of a class. Relators moved for protection on this same ground. Relators also objected that production of the requested information would be overly burdensome, but they did not move for protection on this ground except to argue that premature discovery is burdensome.
At a hearing on relators' motions for protection, relators' counsel proposed "that the court grant our motion for protective order and say that plaintiffs are entitled to have discovery" on preliminary issues "and then hav[e] us hammer out exactly what that means". Plaintiffs' counsel responded:
[W]e know this is a matter that we're not going to reach an agreement on. I will say this, and I'll hold out a small olive branch: if there are some very onerous requests in this discovery that are very difficult for counsel, I'll be the first to listen to them to try to accommodate them....
* * *
[W]e do not want to put some terrible burden on somebody and I will volunteer that. If they come forward and they say to me, "This is a terrible burden, we can't do that," I will do my best to work it out. But I don't know thatI don't know that there's anything in [the discovery request that's] improper.
The court then asked for argument on each interrogatory and request for production. There followed a lengthy discussion in which relators' and plaintiffs' counsel offered the court reasons why each discovery request, one by one, pertained more to class certification issues or to the putative class's claims on the merits. As they proceeded, relators' counsel conceded that *187 some requests pertained to certification issues, and plaintiffs' counsel agreed to clarify several requests and to withdraw as premature interrogatories 8(iv), 17, 19, and 20. At the conclusion of the hearing, each side summarized its position. Relators stated:
I would like to state to the court what our position is with respect to each one of these interrogatories, whether we think it's class or merit [discovery], and we believe that Interrogatories No. 1, 2, 3, and 9(a) are class [discovery], and that each one of the remaining Interrogatories, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 are all merit [discovery] and should be abated pending the disposition of the certification of the class. Similarly, we believe that both the requests for production are merit discovery and not class discovery to theexcept with respect to [Request No.] 1 to the extent it relates to documents which are identified in Interrogatories 1, 2, 3, and 9(a).
Plaintiffs' counsel responded:
I'm not able to tell the court to what extent thesethe answers to these questions and production of this information will be certain to relate to questions only related to class or merit. In my purview at this time all of these questions are important on issues before us: of venue, of the nature of the conspiracy and the defenses to the conspiracy, and to whether or not a class should or should not be certified. I don't know. I can't draw a line that fine, Your Honor, and I think if we're within the discovery rules, we should be allowed to make use of it for all those purposes.
On November 4, 1997, the district court issued a brief order denying defendants' motions for protection without explanation. On November 20, 1997, the court ruled on defendants' objections to specific discovery requests, sustaining some and overruling others. The court's order recites that plaintiffs had withdrawn three interrogatories8, 19, and 20and the second request for production of documents. This recitation conflicts with plaintiffs' counsel's statements at the hearing, where counsel agreed to withdraw not only Interrogatories 19 and 20 but Interrogatory No. 17 as well, and only subpart (iv) of Interrogatory No. 8. Interrogatory No. 17 asked that for all persons identified as having knowledge of relevant facts relating to the lawsuit and the transactions or events out of which it arose, "state the information (concerning the subject matter of this lawsuit, whether it relates to the Plaintiffs' claims or a Defendant's defense) of which you believe said person has knowledge." Interrogatory No. 8 asked:
(i) identify each purchaser from whom you have collected vehicle inventory tax since January 1, 1994; (ii) state the amount of vehicle inventory tax collected from each such purchaser; (iii) identify your salesman making the sale of the vehicle to said purchaser; (iv) identify each of your employees who had communications with said purchasers; and (v) identify each document which relates or pertains to the vehicle inventory tax collected from said purchasers, including, but not limited to sales contracts, deal sheets, and "special inventory tax statements" required to be filed by Tex. Property Tax Code § 23.12B.
Interrogatories 19 and 20 asked for defendants' current net worth and all 1994 and 1995 balance sheets or similar financial statements. Request for production No. 2 called for all documents relating to defendants' current net worth.
Following the court's November 4 and November 20 orders, each of the 636 defendants was required to produce the following information:
 the defendant's name and dealer number, and each business alias and address for all periods since January 1, 1994
 the name of each automobile trade association of which defendant has been a member since January 1, 1992, the dates of membership, and all documents *188 provided by each such association relating to (i) the liability of an automobile dealer or automobile purchaser [to be defined by plaintiffs] for the payment of the vehicle inventory tax, and (ii) the collection of the vehicle inventory tax
 the date and content of, and the parties to, each communication made by the defendant to an automobile purchaser [to be defined by plaintiffs] at the time of sale concerning (i) the defendant's responsibility or liability to pay the vehicle inventory taxes collected from said purchaser, (ii) the purchaser's responsibility or liability to pay vehicle inventory taxes, and (iii) the purchaser's agreement to reimburse the defendant for vehicle inventory taxes; and all documents reflecting such communications
 the date and content of, and the parties to, each non-privileged communication between the defendant and any other person concerning the collection of vehicle inventory taxes from the purchasers of vehicles [within a time frame to be specified by plaintiffs]
 the name, address, telephone number, and period of employment of each officer, director, and employee who made the decision to collect vehicle inventory taxes from purchasers of vehicles; the documents on which each such person relied; and the date and content of, and the parties to, each non-privileged communication between defendant's employees concerning (i) the collection of vehicle inventory taxes from purchasers of vehicles, and (ii) the explanations to be given purchasers of vehicles concerning the collection of vehicle inventory taxes from them
 the total amount of vehicle inventory tax collected from purchasers of vehicles since January 1, 1994
 the names of all purchasers, salesmen, sales managers, and finance/insurance people with knowledge of relevant facts and the transactions and events pertaining to this lawsuit, and the information such people are believed to have (the Court says that relators were ordered to identify all persons with knowledge of relevant facts,[2] but the November 20 order limits the people to be identified to certain categories)
 all statutes and governmental regulations that defendant contends authorize collection of vehicle inventory taxes from purchasers of vehicles.
Relators have petitioned for relief from the November 4 order only, arguing that discovery related to the merits of the putative class's claims should be deferred until after the class is certified, if indeed it is. Plaintiffs in response do not quarrel with relators' argument in the abstract but contend that the information ordered produced is relevant to certification issues.
While the case has been pending in this Court, plaintiffs have offered to settle the discovery issue with the following stipulation:
That all discovery, including but not limited to deposition questions, interrogatory answers, and production of documents, that relates solely to matters other than certification or pre-certification issues, shall be delayed pending certification or non-certification of the class.
(Emphasis added.) Relators argue that the proposed "relates solely" standard is too broad because it is too easy to find some connection between information sought and certification issues. Relators have offered instead this stipulation:
Prior to certification, parties may obtain discovery regarding any matter that is reasonably calculated to lead to the discovery of admissible evidence relevant to class certification. Evidence that relates *189 primarily to the proof of liability and damages shall not be discoverable.
(Emphasis added.) Plaintiffs argue that the "relates primarily" standard is too vague and may be used by relators to cut plaintiffs off from information necessary to show that the class should be certified, notwithstanding the first sentence of the proposed stipulation.
Thus, the parties have tried to resolve their discovery dispute, both with respect to specific kinds of information and by attempting to devise a general guideline to be followed, but they have been unsuccessful.

II
What the Court calls "basic discovery principles"[3] are not in dispute. When resolution of a threshold issuelike class certificationmay significantly simplify or foreclose claims made in a lawsuit, to save the parties undue burden the court should initially restrict discovery to that issue if it is feasible, fair, and efficient to do so. Whether and how to stage discovery necessarily depends on the nature of the specific suit, and while basic guidelines can be generalized, it may often be difficult to determine precisely what discovery should be allowed and what should be deferred. The responsibility for making that determination lies with the trial court assisted by all parties. As the Manual for Complex Litigation states, "the court should call for a specific discovery plan from the parties".[4]
Having said all this, the Court then holds that the burden of devising a discovery plan falls solely on the party resisting discovery, and if that party's plan does not provide for all the discovery to which the requesting party is entitled, the resisting party is entitled to no protection whatever and all the information requested must be produced. Thus, the Court "conclude[s] that, because Relators did not clearly distinguish class and merits discovery, Relators are not entitled to an order bifurcating the two."[5] Unless a motion for protective order shows "that the class and merits issues are clearly separable" and that "the requested discovery is relevant only to the merits and not to the certification issues,"[6] it should be denied. This is a tall order for an advocate: the party seeking protection cannot urge its own adversarial position but must fully accommodate the opponent's request, as it may be determined to be legitimate, or risk loss of all relief.
The Court states that a "party must produce some evidence supporting its request for a protective order" from "unduly burdensome or unnecessarily harassing" discovery requests,[7] citing Garcia v. Peeples.[8] There we held that a motion for protection from discovery must be based on "a particular, articulated and demonstrable injury".[9] We explained that "a movant must show `a particular and specific demonstration of fact as distinguished from stereotyped conclusory statements.' Sweeping predictions of injury and `[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not justify a protective order."[10] These statements are true in the context in which they were written, namely, a defendant's motion to limit plaintiff's use and distribution of trade secret information produced in discovery. We held in Garcia that defendant's affidavit established a confidential interest that the district court properly protected. But Garcia *190 does not hold that evidence is always a prerequisite to protection from overly broad discovery requests, and indeed, we have recently reached the opposite conclusion in In re American Optical Corp.[11]
There, plaintiffs claiming asbestos-related injuries requested production of documents that "were not tied to particular products which plaintiffs allegedly used or to the time periods of such use."[12] The trial court modified plaintiffs' requests slightly but otherwise overruled the defendant's objection that the requests were overly broad. In effect, the court's ruling required the defendant "to produce virtually every document ever generated relating to its products, without tying the discovery to the particular products the plaintiffs claim to have used."[13] We held that the court had abused its discretion:
The trial court must make an effort to impose reasonable discovery limits.... While the trial court has discretion in fashioning discovery, simply ordering a defendant to produce virtually all documents regarding its products for a fifty-year period is an abuse of that discretion.[14]
The defendant in American Optical did not offer evidence in support of its argument that plaintiffs' request was overly broad; rather, it relied on the lack of any discernible relationship between many of the documents requested and the claims pleaded. The defendant argued that because plaintiffs' request was overly broad, it should be struck in its entirety. We disagreed, concluding that although plaintiffs were not entitled to all the information they had requested, they were entitled to significant discovery. Accordingly, we conditionally granted mandamus relief, directing the district court to vacate its order compelling production of documents, but instructed that court to reconsider what discovery should be allowed in light of our opinion.
This Court has never before today assigned the responsibility for determining appropriate discovery to a defendant filing a motion for protection. Repeatedlyin K Mart Corp. v. Sanderson,[15]Dillard Department Stores, Inc. v. Hall,[16]Texaco, Inc. v. Sanderson,[17] and R.K. v. Ramirez[18] we have required not only that the defendant explain why a discovery request was excessive, but also that a plaintiff in response justify the breadth of the request. Today's decision is a sharp and unexplained departure from these cases, requiring a defendant to "specifically differentiate[] class and merits discovery."[19] It is not good enough for a defendant to show that some of the proposed discovery is overly broad, for relators here have done that, as plaintiffs themselves concede. The discovery ordered by the district court essentially requires 636 car dealers to name every person and produce every document related to any transaction in which the inventory tax was involved. By plaintiffs' own estimate, there are hundreds of thousands of such people. Plaintiffs candidly conceded at the hearing before the district court that requiring a statement of what everyone with relevant information is believed to know is too broad at this juncture in the case. In counsel's exact words:
I think that's burdensome at this time, Your Honor. I agree with [relators'] counsel. We'll withdraw that interrogatory [No. 17]. I think it is. At a later point we may try to refine it once we know who the salesmen are.
*191 Notwithstanding, the district court required relators to provide the information, and from that ruling this Court affords relators no relief.
The Court surmiseswithout any showing by the plaintiffsthat "class and merits discovery are likely to be intertwined because the Plaintiffs allege oral and written misrepresentations that vary from one class member to another."[20] The Court is so anxious to invent arguments for plaintiffs it lapses into illogic. For example, the Court explains:
Because whether a fraud was committed may depend on how the add-on charge was characterized, the variations in those characterizations may undermine the requisite commonality and typicality needed for class certification. Classwide discovery may uncover further variations in those representations weighing against class certification.[21]
In other words, full discovery of what representations were made to every putative class member might defeat class certification. But that is not a reason to allow plaintiffs classwide discovery. Plaintiffs do not want the broad discovery they have requested so that after going to the expense of finding out what was told every one of the more than 500,000 possible class members, the class will not be certified!
"[C]lasswide discovery", the Court says, "may uncover a common thread of deceit running through the dealerships' various representations weighing in favor of class certification."[22] That's true, it may; but it just as well may not, and at this point, there is absolutely no way to tell. What is nearly certain is that it will not be necessary to interview a million or more people to determine if there is enough evidence of a conspiracy to certify a class. Pre-certification discovery should be limited, or at least conducted in phases, so as to focus on proof for certification rather than proof of liability. "Relators' proposed bifurcation order", the Court says, "could prevent Plaintiffs from obtaining facts essential to class determination."[23] Assuming this is true, the Court's conclusionthat relators are entitled to no relief whateverdoes not follow. "An order abating all merits discovery", the Court adds, "could prevent Plaintiffs from showing a common thread of deceit in Relators' various representations or other elements of commonality and typicality, potentially defeating certification."[24] Again, limits on discovery could hamper plaintiffs, but there is no showing that they will. To punish relators for arguments they might make by requiring them to produce vast amounts of information beyond the scope of immediate concerns cannot be justified. At one point the Court observes that "production obligations [should] be sequenced or phased, postponing production of the most sweeping discovery requests",[25] but it does not require the parties to do so in this case. Rather, it refuses to disturb the district court's denial of any significant protection from full discovery on the claims of the putative class.

III
When a party's attempted reach exceeds its legal grasp, we routinely limit the reach; we do not amputate the hand. So, for example, in American Optical we rejected defendant's argument that "due to the overbreadth, plaintiffs' entire request for production should be struck."[26] Instead, we concluded that "rather than ... attempting to set the precise bounds of discovery in the first instance, we believe the trial court should have an opportunity to reconsider its ruling in light of our *192 opinion today."[27] Likewise, when a party is less forthcoming than it must be in discovery, the solution is to order appropriate discovery, not force excessive discovery. Thus, in K Mart Corp. v. Sanderson, we concluded that defendant should be protected from only that part of a discovery request that was objectionable.[28] In Texaco, Inc. v. Sanderson, we held that plaintiffs were entitled to some discovery but were not entitled to compel production of all the information requested.[29] Our conditional grant of mandamus relief in that case expressly did not preclude plaintiffs from seeking appropriate discovery. And in R.K. v. Ramirez, we conditionally granted mandamus relief directing the trial court to reconsider what portions of defendant's medical records should be discoverable.[30]
Contrary to all these cases, the Court not only denies relators any relief, it makes any further relief in the trial court virtually impossible. Even if the Court contemplates that relators can go on filing motions for protection until they propose a discovery plan that is just right for everyone, given that relators have failed thus far, it is most unlikely that theyor anyone else in their positioncan ever succeed.
The Court admonishes: "As with all litigants, we expect class-action litigants to cooperate on discovery plans and make any agreements reasonably necessary for the efficient disposition of the case."[31] The Court all but ignores the fact that plaintiffs and relators have tried to resolve their differences. Each side proposed a stipulation to guide discovery: plaintiffs offered to forego discovery "related solely" to issues other than certification, and defendants offered to produce all information reasonably calculated to lead to the discovery of admissible evidence relevant to class certification, deferring discovery "related primarily" to liability and damages. The parties discussed each specific request with the trial court. Counsel for plaintiffs and relators were very professional and remarkably cooperative in attempting to reach accord, but as plaintiffs' counsel candidly told the trial court, "this is a matter that we're not going to reach an agreement on." Neither the parties nor their counsel should be faulted for refusing to "cooperate on discovery plans".[32] They have all tried but have not succeeded. When parties try but simply cannot in good faith resolve their differences over discovery and seek a judicial decision, the Court's view is that the party resisting discovery loses.
The Court faults relators for not being definite enough in delineating pre-certification discovery. But the trial court and the parties in the present case went through each of plaintiffs' interrogatories and document requests one by one. They discussed at length the relevance of each to certification issues. It takes only a modicum of common sense to see that if plaintiffs must know what every one of more than 500,000 vehicle purchasers, every salesmen who sold any of them a vehicle, all those salesmen's sales managers, and all the finance and insurance personnel involved in the transactions knew about the charge of vehicle inventory taxes, either *193 plaintiffs do not have any real chance of having the class certified, or they are using discovery to extort a settlement. Plaintiffs' counsel, to his credit, acknowledged to the district court that such discovery is overly broad. But this Court concludes that the district court did not abuse its discretion in denying relators protection from a discovery request plaintiffs conceded was excessive at this point in the litigation. Indeed, the Court will not even require that discovery be limited to information that relates primarily to certification issues in accordance with plaintiffs' offered stipulation.
Finally, the Court faults relators for failing to prove that plaintiffs' request is unduly burdensome. An assertion that discovery is burdensome should be supported by evidence, but relators make no such assertion. They expressly, repeatedly disavow any such assertion. Their claim is not that compliance with plaintiffs' discovery request will consume immense time and resources, although that is altogether obvious; rather, their claim is that the information requested is broader than necessary to resolve the threshold issue of class certification. Relators are entitled to make this claim based on the face of the request and the pleadings, just as was done in American Optical, K Mart, Texaco, and Dillard.
The Court asserts that "[r]elators did not give the trial court or this Court any guidance on how to distinguish merits and certification discovery, much less how to evaluate to what issue the challenged discovery `primarily' relates."[33] It is quite clear that relators did not give this Court enough guidance, and it is fairly clear that relators will be hard pressed to meet the Court's demands, but it is flat not true that relators did not provide any guidance. The Court is equally incorrect in stating that relators seek "abat[ement] of all Plaintiffs' discovery requests".[34] Relators have volunteered to answer several of plaintiffs' interrogatories and have offered to agree to discovery of all information that "relates primarily" to class certification issues. The Court faults relators for not "produc[ing] any evidence that their existing discovery obligations are unduly burdensome"[35] when burdensomeness is not their claim. In all fairness to relators and plaintiffs both, as well as their able counsel, the Court's exaggerated criticisms are not the kind that can ever be satisfied.

IV
Often at some point in litigation, sometimes fairly early on, the game is no longer worth the candle. Defendants in this case must be close to that point. Plaintiffs in their DTPA notice letter demanded $20 million in actual damages, a little less than $40 for each putative class member. Divided equally among the 636 defendants, plaintiffs' demand comes to almost $31,500 apiece. Paying their own attorney fees and plaintiffs', defendants can meet plaintiffs' demand now for a fraction of what their expenses will be after today's ruling. Or they can fight on, and if they prevail, incur expenses only several times over what they face todaya pyrrhic victory if ever there were one. For defeat to be preferable to victory is, or rather should be, an odd concept of justice.
The civil litigation system is pricing itself out of the dispute resolution market, and this case is a prime example. The principal legal issueswhether vehicle dealers have the right to charge vehicle inventory taxes to purchasers, and whether any misrepresentations of the charges were actionableare not complex and should not require extensive discovery. The venue and certification issues are not much more complicated. The parties have tried to work through their differences on discovery but have been unsuccessful. *194 What is needed is judicial direction, and that is what the Court denies.
I would direct the district court to reconsider relators' motions for protection and formulate a fair and efficient discovery plan. Because the Court refuses this course, I respectfully dissent.
NOTES
[1] In several recent cases, we have reviewed discovery requests challenged as overbroad and explained the relation to the requirement that discovery be reasonably tailored to include only relevant matters. We have identified as overbroad requests encompassing time periods, products, or activities beyond those at issue in the casein other words, matters of questionable relevancy to the case at hand. This kind of review can generally be done on close examination of the pleadings and specific claims and defenses made, and it is clear that the sheer volume of a discovery request does not in itself render the request irrelevant or overbroad as a matter of law. See In re American Optical Corp., 988 S.W.2d at 713 (in asbestos case, request for production of nearly every document the defendant had ever produced on any of its products over the course of its fifty years in business held overbroad and of questionable relevancy); K Mart Corp., 937 S.W.2d at 431 (in case involving the plaintiff's abduction from the defendant's parking lot, request for description of all criminal conduct at the location during the preceding seven years held overbroad); Dillard Dep't Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex.1995) (in case of false arrest at a Houston department store, request for every claims file or incident report from every store in the company's chain involving false arrest, civil rights violations, and use of excessive force held overbroad); Texaco, 898 S.W.2d at 814-15 (in case involving exposure to toxic chemicals that allegedly caused asbestos-related disease, request for "all documents written by [defendant's safety director] that concern[ed] safety, toxicology, and industrial hygiene, epidemiology, fire protection and training" held overbroad); General Motors Corp. v. Lawrence, 651 S.W.2d 732, 734 (Tex.1983) (in case involving allegedly defective fuel filler necks in a particular model truck, requests concerning fuel filler necks in every vehicle ever made by General Motors held overbroad).
[1] TEX. BUS. & COM.CODE §§ 17.41-.63.
[2] Ante at 179.
[3] Ante at 180.
[4] MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.12 (1995).
[5] Ante at 175.
[6] Ante at 182-83.
[7] Ante at 181.
[8] 734 S.W.2d 343 (Tex.1987).
[9] Id. at 345.
[10] Id. (citations omitted).
[11] 988 S.W.2d 711 (Tex.1998) (per curiam).
[12] Id. at 712.
[13] Id. at 711-712.
[14] Id. at 713.
[15] 937 S.W.2d 429 (Tex.1996) (per curiam).
[16] 909 S.W.2d 491 (Tex.1995) (per curiam).
[17] 898 S.W.2d 813 (Tex.1995) (per curiam).
[18] 887 S.W.2d 836 (Tex.1994).
[19] Ante at 183.
[20] Ante at 183 (emphasis added).
[21] Ante at 183 (citations omitted).
[22] Ante at 183 (emphasis added).
[23] Ante at 184 (emphasis added).
[24] Ante at 184 (emphasis added).
[25] Ante at 184.
[26] American Optical, 988 S.W.2d at 713.
[27] Id. at 713-714.
[28] K Mart, 937 S.W.2d at 431 ("We do not hold that a request as broad as [plaintiff's for all documents relating to the incident in which she was injured] is proper in every circumstance. Here, however, the district court did not abuse its discretion in enforcing [plaintiff's] requests, except for requiring production of work product.").
[29] Texaco, 898 S.W.2d at 815 ("While plaintiffs are entitled to discover evidence of defendants' safety policies and practices as they relate to the circumstances involved in their allegations, a request for all documents authored by [a corporate official] on the subject of safety, without limitation as to time, place or subject matter, is overbroad.").
[30] 887 S.W.2d at 844.
[31] Ante at 184.
[32] Ante at 184.
[33] Ante at 185 (emphasis added).
[34] Ante at 185 (emphasis added).
[35] Ante at 185.