6-96-028-CV Long Trusts v. Dowd 













In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00084-CV


______________________________





IN RE: AMERICAN HOME ASSURANCE COMPANY, ET AL.









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant








O P I N I O N



 Relators seek review by mandamus of a discovery order of the trial court in Cause Number
93-0127, R.S.R. Corp., et al. v. A.I.U. Ins. Co., et al., in the 71st Judicial District Court of Harrison
County, Texas ("the underlying litigation"). Relators are 1) American Home Assurance Company;
2) Granite State Insurance Company; 3) Insurance Company of the State of Pennsylvania; 4)
Lexington Insurance Company; and 5) National Union Fire Insurance Company of Pittsburgh,
Pennsylvania (collectively "American Home"), defendants in the underlying litigation. Also entering
an appearance as a Relator, but represented by separate counsel, is Gibraltar Casualty Company
("Gibraltar"), also a defendant in the underlying litigation. Respondent is the Honorable Bonnie
Leggat, Judge of the 71st Judicial District Court of Harrison County. The real parties in interest are
R.S.R. Corporation, et al. ("RSR"), plaintiffs in the underlying litigation. (1) 

 On May 22, 2002, the trial court issued its "Amended Order," which pertained to discovery
in the underlying litigation. Relators' Petition for Writ of Mandamus and Request for Temporary
Relief were filed. In their Request for Temporary Relief, Relators sought to stay enforcement of the
Amended Order and to stay further depositions of their representatives by the real parties in interest,
pending this court's determination. Our order granting the requested temporary relief was issued on
June 18, 2002. It has been called to this court's attention that on July 23, 2002, allegedly without
notice and an opportunity of Relators to be heard, the trial court issued a Second Amended Order,
a copy of which is attached to this opinion as Exhibit A. Relators contend the amended order,
designated as "Second Amended Order," also constitutes an abuse of discretion on the part of the
trial court, and they also seek mandamus relief from the second order. In the interest of judicial
economy, we shall consider their Petition for Writ of Mandamus as also applicable to the "Second
Amended Order." 

The Disputed Discovery

 In 2001 RSR served discovery motions on the defendant insurers. On December 3, 2001,
RSR moved the trial court to compel the defendants to produce the requested information. 
Thereafter, on January 9, 2002, RSR served additional discovery which went unanswered. RSR filed
an additional Motion to Compel on February 20, 2002. A hearing on this motion was held off the
record on March 7, 2002, at which the trial court directed production of requested materials, except
for those documents protected by the attorney-client or work-product privilege. On May 1, 2002,
the trial court conducted an on-the-record hearing regarding the requested discovery. Thereafter, on
May 22, 2002, the trial court issued its "Amended Order."

 In their petition, Relators object both to the language of the Amended Order itself, as well
as to the subject matter and scope of the discovery ordered, as irrelevant, unduly burdensome, and
privileged.

 A discovery order compelling overly-broad discovery well outside the bounds of proper
discovery is an abuse of discretion for which mandamus is the proper remedy. The party from whom
such overly-broad discovery is ordered has no adequate remedy at law. K Mart Corp. v. Sanderson, 
937 S.W.2d 429, 431-32 (Tex. 1996).

Proper Scope of Discovery

 The Rules of Civil Procedure impose two general limitations on discovery: 1) it must not
be privileged; and 2) it must be relevant to the subject matter of the pending action, claim, or
defense. The information sought must be reasonably calculated to lead to the discovery of admissible
evidence. Tex. R. Civ. P. 192.3(a). Discovery does have limitations imposed by the rules. The
court may limit discovery if it determines that the discovery requests are: (a) unreasonably
cumulative or duplicative, or obtainable from some other source that is more convenient, less
burdensome, or less expensive; or (b) the burden or expense of the proposed discovery outweighs
its likely benefit, taking into account the needs of the case. Tex. R. Civ. P. 192.4 (a), (b). The rules
also protect from unlimited discovery so-called "work product," which is defined as: "core work
product," i.e., the work product of an attorney or his or her representative, containing the attorney's
or representative's "mental impressions, opinions, conclusions, or legal theories," which are not
discoverable; and "other work product," discoverable only on a showing of substantial need and
undue hardship on the part of the party seeking discovery. Tex. R. Civ. P. 192.5(b)(1), (2). 

 In In re Alford Chevrolet-Geo, 997 S.W.2d 173, 180 (Tex. 1999), the Texas Supreme Court
set forth a summary of its recent decisions regarding the scope of discovery, and we quote
extensively from that opinion and include the caselaw cited by the Court:

 The primary objective of discovery is to ensure that lawsuits are "decided by what the
facts reveal, not by what facts are concealed." Jampole v. Touchy, 673 S.W.2d 569,
573 (Tex. 1984). . . . 

 

 In practice, however, discovery is not only "a tool for uncovering facts
essential to accurate adjudication," but also "a weapon capable of imposing large and
unjustifiable costs on one's adversary." Frank H. Easterbrook, Comment, Discovery
as Abuse, 69 B.U.L.Rev. 635, 636 (1989). Discovery is often the most significant
cost of litigation. See Wayne D. Brazil, Views From the Front Lines: Observations
by Chicago Lawyers About the System of Civil Discovery, 1980 Am. B. Found. Res.
J. 219 229. Because the costs of compliance are usually borne solely by the replying
party, a requesting party improves its bargaining position by maximizing those costs. 
See Easterbrook, supra, at 636 ("Litigants with weak cases have little use for
bringing the facts to light and every reason to heap costs on the adverse party . . . . 
The prospect of these higher costs leads the other side to settle on favorable
terms.").  . . . 

 

 First, discovery requests must be reasonably tailored to include only matters
relevant to the case. See In re American Optical Corp., 988 S.W.2d 711, 712 (Tex.
1998); Texaco, Inc. v. Sanderson, 898 S.W.2d 813, 814 (Tex. 1995) [Footnote 1, see,
infra]. Second, discovery may not be used as a fishing expedition or to impose
unreasonable discovery expenses on the opposing party. See K Mart Corp. v.
Sanderson, 937 S.W.2d 429, 431 (Tex. 1996); In re Time Warner Inc. Sec. Litig., 9
F.3d 259, 263 (2d Cir. 1993). Third, a court may "in the interest of justice," issue
a protective order to "protect the movant from undue burden, unnecessary expense,
harassment, annoyance, or invasion of personal, constitutional, or property rights." 
Tex. R. Civ. P. 192.6 (b). The new discovery rules explicitly encourage trial courts
to limit discovery when "the burden or expense of the proposed discovery outweighs
its likely benefit, taking into account the needs of the case, the amount in
controversy, the parties' resources, the importance of the issues at stake in the
litigation, and the importance of the proposed discovery in resolving the issues." 
Tex. R. Civ. P. 192.4(b). Although a trial court has broad discretion to schedule and
define the scope of discovery, it can abuse its discretion by acting unreasonably. See
In re Colonial Pipeline Co., 968 S.W.2d 938, 941 (Tex. 1998). A party resisting
discovery, however, cannot simply make conclusory allegations that the requested
discovery is unduly burdensome or unnecessarily harassing. The party must produce
some evidence supporting its request for a protective order. See Garcia v. Peeples,
734 S.W.2d 343, 345 (Tex. 1987); Independent Insulating Glass/Southwest, Inc. v.
Street, 722 S.W.2d 798, 802 (Tex. App.-Fort Worth 1987, writ dism'd). 

 

Id. (emphasis added).

 We also reproduce footnote 1, from above:

 In several recent cases, we have reviewed discovery requests challenged as
overbroad and explained the relation to the requirement that discovery be reasonably
tailored to include only relevant matters. We have identified as overbroad requests
encompassing time periods, products, or activities beyond those at issue in the case
in other words, matters of questionable relevancy to the case at hand. This kind of
review can generally be done on close examination of the pleadings and specific
claims and defenses made, and it is clear that the sheer volume of a discovery request
does not in itself render the request irrelevant or overbroad as a matter of law. See
In re American Optical Corp., 988 S.W.2d at 713 (in asbestos case, request for
production of nearly every document the defendant had ever produced on any of its
products over the course of its fifty years in business held overbroad and of
questionable relevancy); K Mart Corp., 937 S.W.2d at 431 (in case involving the
plaintiff's abduction from the defendant's parking lot, request for description of all
criminal conduct at the location during the preceding seven years held overbroad);
Dillard Dep't Stores, Inc. v. Hall, 909 S.W.2d 491, 492 (Tex. 1995) (in case of false
arrest at a Houston department store, request for every claims file or incident report
from every store in the company's chain involving false arrest, civil rights violations,
and use of excessive force held overbroad); Texaco, 898 S.W.2d at 814-15 (in case
involving exposure to toxic chemicals that allegedly caused asbestos-related disease,
request for "all documents written by [defendant's safety director] that concern[ed]
safety, toxicology, and industrial hygiene, epidemiology, fire protection and training"
held overbroad); General Motors Corp. v. Lawrence, 651 S.W.2d 732, 734 (Tex.
1983) (in case involving allegedly defective fuel filler necks in a particular model
truck, requests concerning fuel filler necks in every vehicle ever made by General
Motors held overbroad).

 

Id. at 180-81 (emphasis added).

Relief Sought by Plaintiffs

 With these principles in mind, we examine first the relief sought by plaintiffs. In its Ninth
Amended Petition, RSR alleges that defendants, among them, Relator American Home, insured RSR
with policies providing coverage for environmental liability, but then refused to indemnify RSR for
such claims made on the policies. 

 RSR seeks recovery under the following legal theories: breach of contract; regulatory
estoppel; equitable estoppel; quasi-estoppel; fraud; negligent misrepresentation; violation of Tex.
Ins. Code Ann. art. 21.21 (Vernon 1981 & Supp. 2002); violation of Tex. Ins. Code Ann. art. 21.55
(Vernon Supp. 2002); civil conspiracy; defendant International Insurance Company's violation of
Tex. Ins. Code Ann. art. 21.21; defendant International Insurance Company's breach of contract;
reformation of liability insurance policies to provide coverage for environmental claims; declaratory
relief; and attorney's fees. The prayer for relief seeks declaratory relief, actual, compensatory and
consequential damages of not more than $1.4 billion, punitive and treble damages, and attorney's
fees.

Relators' Objections to the Discovery Order

 Relators raise two general lines of argument:

 1. The language of the trial court's order is contrary to the rules of discovery because it only
permits Relators to raise objections based on attorney-client privilege and attorney work product;

 2. The trial court's discovery order permits plaintiffs/real parties in interest to conduct
discovery of matters not relevant to the lawsuit, and also permits them to engage in a "fishing
expedition," meaning discovery in search of evidence of a claim, as opposed to discovery in search
of evidence to support or oppose a claim.

The Second Amended Order

 In its Second Amended Order, the trial court specifically overruled all objections to the
requested discovery except objections based on attorney-client privilege and attorney work product. 
A special master was appointed to review those objections. Except for those items subject to these
specific privileges, the Second Amended Order provides that all documents requested by the real
parties in interest from Relators, and all related information sought in deposition by the real parties
in interest, must be produced or disclosed. The original Amended Order made no reference to other
objections and appears to preclude Relators from raising any objection to any discovery except those
privileges specifically permitted. The Second Amended Order reflects the position taken by the real
parties in interest at oral argument, i.e., all other objections were overruled. As the order in place
no longer appears to preclude the raising of permissible objections, Relators' first request for relief
is moot.

 This court recognizes that discovery is based on the pleadings. In the present case, the
pleadings focus on the "pollution exclusion" clause of the insurance policies involved. 

 The "pollution exclusion" has been addressed in Texas law in Nat'l Union Fire Ins. Co. v. CBI
Indus., Inc., 907 S.W.2d 517, 519 (Tex. 1995). CBI was sued as a result of damages and injuries
suffered due to an accident at the Marathon Refinery in Texas City, Texas, caused by the spillage
of hydrofluoric acid. When the claims against CBI were tendered to the insurers, coverage was
denied, precipitating the lawsuit. The insurers moved for summary judgment before discovery,
arguing that the exclusion provisions precluded coverage as a matter of law, and the trial court
granted the motion. The Texas Supreme Court held that the provisions of the insurance policy are
to be interpreted according to the law of contracts, id. at 520, and that the extrinsic evidence sought
to be introduced by CBI, the insured, representations made by insurance company representatives
to the Texas State Board of Insurance as to the meaning of these provisions, (2) was not admissible:

 Extrinsic evidence may, indeed, be admissible to give the words of a contract
a meaning consistent with that to which they are reasonably susceptible, i.e., to
"interpret" contractual terms. If the contract language is not fairly susceptible of
more than one legal meaning or construction, however, extrinsic evidence is
inadmissible to contradict or vary the meaning of the explicit language of the parties'
written instrument.

 

Id. at 521 (emphasis added). See Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex.
2000) (the question of whether a contract is ambiguous is a question of law for the court, and where
the contract language can be given a definite legal meaning, and is not readily susceptible to more
than one meaning, it is unambiguous). The CBI holding that "pollution exclusion" provisions are
unambiguous has also been adopted or reaffirmed in other opinions. (3) 

 Because the language of the pollution exclusion was clear and susceptible to only one
possible interpretation, and the court held there were no ambiguities, there were no factual issues
meriting discovery. CBI, 921 S.W.2d at 522. The court in CBI also held that parol evidence is not
admissible for the purpose of creating an ambiguity. Id. at 520. Further, discovery undertaken with
the purpose of finding an issue, rather than in support of an issue already raised by the pleadings,
would constitute an impermissible "fishing expedition" under the cases cited in Alford Chevrolet-Geo. 

 Even though relief under theories other than breach of contract are sought by the plaintiffs
in the present litigation, all of them require that the court interpret the "pollution exclusion"
provision of each of the liability insurance policies in question. For example, even the allegations
of fraud made in the petition allege that the insurers made fraudulent representations to insurance
regulators of the meaning of the pollution exclusion provision, not that the insurers committed fraud
by selling the liability policies to RSR and its affiliates. 

 If the court determines that the provision in question is not ambiguous, the discovery will be
limited, because evidence would not be admissible that would conflict with the legal interpretaion
of that provision. We also recognize that the Texas Supreme Court decision in CBI, as well as other
cases interpreting similar provisions, were rendered since this lawsuit was originally filed. 

 In the present case, however, our court is not in a position to determine the possible
ambiguity or interpretation of the policies in question because the question of ambiguity is not
properly before the court at this time. The contracts would have to be placed into evidence in order
for this court to construe them by looking at the specific language of the various contracts and the
contracts in their entirety. We believe that this issue should be placed before the trial court, in order
that the proper scope of discovery may be addressed. Until such time as the ambiguity issue is
addressed by the trial court, we are limited to looking at the Second Amended Order issued by the
trial court.

 According to the pleadings, one of the primary issues in this case is the interpretation of
"pollution exclusion" in the insurance policies issued by Relators, the interpretation of which was
utilized by Relator insurers to deny coverage to RSR on its environmental claims. 

 The parties agreed at oral argument that we should address the Second Amended Order
issued by the trial court on July 23, 2002. We first order the trial court to conduct a hearing on the
Second Amended Order so that the parties who did not have notice of this proposed amended order
can present evidence and arguments to the trial court on matters that have been altered by the
amendments to the order. In addition to the trial court addressing these matters, we order the
following:

 Paragraphs 1 and 5 of the Second Amended Order present proper, relevant matters for
discovery, subject to the privilege review provided in Paragraph 7.

 Paragraph 4, requiring documentation and deposition information regarding the setting of
reserves for third-party claims against the plaintiffs is improper because the information sought is
not admissible and would not lead to the discovery of admissible evidence.

 Discovery of the information allowed in Paragraphs 2 and 6 of the Second Amended Order
is permissible only if the trial court finds, as a matter of law, that the pollution exclusion provisions
of the policies in question are ambiguous, subject to the privilege review of Paragraph 7. 

 Discovery allowed in Paragraph 3 of the Second Amended Order should be limited by a clear
definition as to the term "by or against Texans." For example, this definition should state whether
it is applicable to a Texas corporation or corporations authorized to do business in Texas, as well as
clarify whether it applies to only Texas residents living in Texas at the applicable time or to Texas
residents even though they were outside Texas at the time of the claims.

 We conclude the trial court erred by failing to narrow the scope of the discovery as set forth
above. The discovery orders are set aside. The Petition for Writ of Mandamus is therefore
conditionally granted. The writ will issue only if the trial court fails to take appropriate action in
accordance with this opinion.




 Ben Z. Grant

 Justice


Date Submitted: August 8, 2002

Date Decided: August 27, 2002


Publish
1. Additional parties in the underlying litigation have joined American Home's petition: 
Gibraltar Casualty Company, United States Fire Insurance Company, and International
Insurance Company.
2. See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 519 n.3 (Tex. 1995),
regarding statements made by a representative of an insurance company in 1985 to the State
Board of Insurance that there was no intention to have these exclusions read in such a
restrictive manner. 
3. See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464-65 (Tex. 1998);
Zaiontz v. Trinity Universal Ins. Co., No. 04-01-00329-CV, 2002 Tex. App. LEXIS 2981, at
**14-17 (Tex. App.-San Antonio Apr. 30, 2002, no pet. h.); see also Certain Underwriters at
Lloyd's London v. C.A. Turner Constr. Co., 112 F.3d 184, 187-88 (5th Cir. 1997); Int'l Ins. Co. v.
RSR Corp., No. 3:00-CV-0250-P, 2002 U.S. Dist. LEXIS 5337, at *26-31 (N.D. Tex. Mar. 27,
2002) (case involving same parties as this mandamus action); Matador Petroleum Corp. v. St.
Paul Surplus Lines Ins. Co., No. 3:96-CV-1697-G, 1997 U.S. Dist. LEXIS 22164, at *2-3, 11
(N.D. Tex. Aug. 26, 1997); Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711
So.2d 1135, 1137-40 (Fla. 1998); TWA, Inc. v. Associated Aviation Underwriters, 58 S.W.3d 609,
622 (Mo. App. E.D. 2001) (does not cite CBI, but same holding). Contra, Am. States Ins. Co. v.
Koloms, 687 N.E.2d 72 (Ill. 1997); Doerr v. Mobil Oil Corp., 774 So.2d 119 (La. 2000).



e mso 10]>











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00120-CR

                                                ______________________________

 

 

                                KWAME NKRUMAH PRICE,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 76th Judicial District Court

                                                              Titus County, Texas

                                                         Trial Court
No. CR15,894

 

                                                                                                   

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            When Mount
Pleasant police officers Joshua Hatfield and Kevin Bisnette observed Kwame Nkrumah
Price driving on Interstate Highway 30, Prices vehicle was close behind a
tractor-trailer rigas near as six feet behind the truck or as far as one and
one-half car lengths behind ittravelling at a normal speed for that
highway.  The officers stopped Price for
following the truck too closely[1]
and, during the stop, first, smelled the odor of marihuana, next, searched
Prices vehicle, and, finally, discovered 28.08 grams of cocaine and 4.74
pounds of marihuana.  

            Price
appeals his resulting conviction[2]
for possession of more than four grams, but less than 200 grams of a controlled
substance (cocaine), a second degree felony.[3]
 See
Tex. Health & Safety Code Ann.
§ 481.115(d) (West 2010).  We affirm the
judgment of the trial court because (1) a jury finding under Article 38.23(a),
concerning the searchs legality, is not reviewable for evidentiary
sufficiency, and (2) Price has not preserved any challenge to the admission of
the evidence from the traffic stop.

(1)        A Jury Finding Under Article 38.23(a), Concerning the Searchs
Legality, Is Not Reviewable for Evidentiary Sufficiency

 

            Price argues
that the initial traffic stop occurred in violation of the Fourth Amendment and
Article I, Section 9 of the Texas Constitution. 
Price asserts that officers lacked reasonable suspicion that he had
committed a traffic offense.  The trial
court had instructed the jury that, if it found the officer had no reasonable
suspicion to believe Price was following too closely, the jury should disregard
evidence obtained from the resulting traffic stop.  See
Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

            Prices
brief does not explicitly attack the sufficiency of the evidence, but does
argue in multiple places that the evidence does not support a finding of
reasonable suspicion.  We interpret these
statements to be a challenge to the sufficiency of the evidence of the Article
38.23[4]
jury instruction.

            The Texas
Court of Criminal Appeals has recognized that evidentiary sufficiency and
admissibility of evidence are distinct issues. 
Sufficiency of the evidence is concerned with whether the elements of an
offense have been logically established by all the evidence presented, both
admissible and inadmissible.  See Hanks v. State, 137 S.W.3d 668, 671
(Tex. Crim. App. 2004); Henry v. State,
No. 06-11-00010-CR, 2011 Tex. App. LEXIS 7255, at **67 (Tex. App.Texarkana
Sept. 6, 2011, no pet.) (mem. op., not designated for publication).  Admissibility relates to the fairness of
introducing evidence and its logical relevance.  Hanks,
137 S.W.3d at 671.  Accordingly, a sufficiency
review is appropriate only as to the sufficiency of the States proof as to
elements of the offense.  Id. at 672; see Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997). 

            The legality
of appellants detention is not an element of the offense charged, but relates
to the admissibility of evidence.  See Malik, 953 S.W.2d at 240.  But, an evidentiary sufficiency review is not
available for an Article 38.23 jury instruction.  Henry,
2011 Tex. App. LEXIS 7255, at **67; Saylor
v. State, No. 05-09-01558-CR, 2011 Tex. App. LEXIS 1048, at **56 (Tex.
App.Dallas Feb. 15, 2011, pet. refd) (mem. op., not designated for
publication); Verhagen v. State, No.
05-05-00078-CR, 2006 Tex. App. LEXIS 1279, at **4-6 (Tex. App.Dallas Feb. 16,
2006, pet. refd) (mem. op., not designated for publication); see Holmes v. State, 248 S.W.3d 194, 200
(Tex. Crim. App. 2008) ([h]ad he received an Article 38.23 jury instruction,
he would have no appellate claim at all because the jurys decision regarding
that factual dispute would be unreviewable).

            We overrule
this point of error.

 

(2)        Price Has Not Preserved
any Challenge to the Admission of the Evidence from the Traffic Stop

 

            Prices brief also
challenges the admissibility of the evidence discovered during the traffic
stop.  Before we can address the merits
of Prices admissibility argument,[5]
we must first determine whether the issue has been preserved for appellate
review.  Ford v. State, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (error
preservation is systemic requirement; if error not preserved, appellate
courts should not address issue).

            Price did
not file a pretrial motion to suppress the evidence[6]
and did not object when the State introduced evidence resulting from the
seizure.  In fact, when the State offered
the cocaine in this caseand the marihuana in the companion casediscovered in
the search of Prices car, Price affirmatively stated no objection.  Prices only attempt to challenge the
evidence resulting from the seizure was his motion for directed verdict made
after the State rested.  This motion was
made after all of the challenged evidence had been admitted by the trial court
without objection.  The motion for
directed verdict does not request that the evidence be suppressed or excluded,
but rather only requests a directed verdict of not guilty.   Price did not request the evidence be struck
from the record, but rather requested only a directed verdict. 

            A
motion for directed verdict is normally not an effective method for raising
suppression issues.  Although we
recognize that a motion to suppress, in a typical drug-possession case, is
almost always the functional equivalent of an acquittal,[7]
the remedy for illegally obtained evidence is not an acquittal, but is rather
exclusion of the evidence.[8]  Even if the police officers lacked reasonable
suspicion for the initial detention, the evidence may be admissible under the
attenuation-of-taint doctrine, or other evidence not tainted by the illegal
search or seizure may exist.[9]  Prices sole challenge requested relief to
which he was not entitled.

            Even if we
interpreted Prices motion for directed verdict as a motion to suppress, such a
motion would be untimely.  To preserve an
issue for appellate review, Price should have complained or objected to the
trial court on a timely basis.  See Tex.
R. App. P. 33.1(a)(1).  Such an
objection must be presented in a timely manner before the admission of the
evidence or as soon as the objectionable nature of the evidence became
apparent.  Kane v. State, 173 S.W.3d 589, 59293 (Tex. App.Fort Worth 2005,
no pet.); see Tex. R. App. P. 33.1;
Martinez v. State, 98 S.W.3d 189, 193
(Tex. Crim. App. 2003); Ethington v.
State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).  The State first introduced evidence resulting
from the traffic stop approximately eighty pages in the reporters record
before the motion for a directed verdict appears.  Price failed to make a timely objection to
the admission of the evidence.  To the
extent Prices brief can be interpreted as arguing the trial court erred in not
suppressing the evidence, the admissibility of the evidence obtained as a
result of the detention has not been preserved for review.  We overrule this point of error.

            For
the reasons stated, we affirm the judgment of the trial court.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

Date Submitted:          January
3, 2012

Date Decided:             January
12, 2012

 

Do Not Publish

 

 











[1]See Tex.
Transp. Code Ann. § 545.062(a) (West 2011).

 





[2]Price
was sentenced to 6.25 years imprisonment. 


 





[3]In
a companion case, our cause number 06-11-00121-CR, the appeal of which is also
decided today, Price was convicted of the state jail felony of possession of
more than four ounces, but less than five pounds, of marihuana and received a
sentence of two years imprisonment.  See Tex.
Health & Safety Code Ann. § 481.121(b)(3) (West 2010).





[4]A
defendant is entitled to a jury instruction pursuant to Article 38.23(a) of the
Texas Code of Criminal Procedure when there is a factual dispute regarding the
legality of the search.  Robinson v. State, No. 06-09-00225-CR, 2011
Tex. App. LEXIS 200 (Tex. App.Texarkana Jan. 13, 2011, pet. granted) (mem.
op., not designated for publication). 
Article 38.23(a) provides:

 

 

No
evidence obtained by an officer or other person in violation of any provisions
of the Constitution or laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be admitted in evidence against the
accused on the trial of any criminal case.

 

In
any case where the legal evidence raises an issue hereunder, the jury shall be
instructed that if it believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this Article, then and in such
event, the jury shall disregard any such evidence so obtained.

 

Tex.
Code Crim. Proc. Ann. art. 38.23 (West 2005).  





[5]We
note Price has provided an excellent brief discussing the requirements for a
traffic stop and applying said requirements to this case.   

 





[6]The
record does not contain any motion to suppress. 
Our clerks office contacted the District Clerk of Titus County and was
informed that their file does not contain any motion to suppress.

 





[7]In
many cases all of the States evidence will have been tainted by the illegal
search or seizure and, thus, suppression is the functional equivalent of an
acquittal.

 





[8]Evidence
illegally obtained can be excluded under the exclusionary rule of the Fourth
Amendment, the Texas Constitution, or Article 38.23(a) of the Texas Code of
Criminal Procedure.  See Mapp v. Ohio, 367 U.S. 643 (1961); see also Tex. Const. art.
I, § 9; Tex. Code Crim. Proc. Ann.
art. 38.23(a).

 





[9]See, e.g., State v. Elias, 339 S.W.3d
667, 678 (Tex. Crim. App. 2011) (discussing attenuation of taint).